LAW OFFICES
# WADE & LOWE
A PROFESSIONAL CORPORATION
15615 ALTON PARKWAY- SUITE 270
IRVINE, CALIFORNIA 92618
TELEPHONE: (949) 753-1000
FACSIMILE:    (949) 753-1039

GEOFFREY T. HILL (STATE BAR NO. 247138)
Email: ghill@wllegal.com

LAW FIRM
REID & WISE, LLC
One Penn Plaza, Suite 2015
New York, NY 10119
Telephone: (212) 858-9968
Facsimile: (526) 821-8978

Shiyong Ye. (State Bar No. 4824090)
Email: sye@reidwise.com

Attorney for Plaintiff Liu Hongwei, Li Xia, Liu Shuang, Xie Youshang, Wang Ying, Yu Zhihai, Wang Wei, and Yan Qiujin.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Liu Hongwei, Li Xia, Liu Shuang, Xie Youshang, Wang Ying, Yu Zhihai, Wang Wei, and Yan Qiujin.<br><br>Plaintiff,<br><br>v.<br><br>Velocity V Limited Partnership, Velocity Regional Center LLC, Jellick Rowland LLC, Yin Nan Wang, a.k.a, Michael Wang, Ning-Lee Ko, Ruhen Chen and Christine Guan,<br><br>Defendants. | **Case No:**<br><br>**COMPLAINT FOR:**<br><br>1. SECURITIES FRAUD (15 U.S.C. SECTION 77l;<br><br>2. SECURITIES FRAUD (15 U.S.C. SECTION SECTION 78j(b) & 17 C.F.R. SECTION 240.10b-5);<br><br>3. FRAUD AND DECEIT (INTENTIONAL MISREPRESENTATION OF FACT);<br><br>4. NEGLIGENT MISREPRESENTATION; |

**COMPLAINT**

                                         )    5.   BREACH OF FIDUCIARY DUTY
                                         )
                                         )       (*Jury Trial Demand*)
                                         )
                                         )

Plaintiffs, Liu Hongwei, Li Xia, Liu Shuang, Xie Youshang, Wang Ying, Yu Zhihai, Wang Wei, and Yan Qiujin, by and through their undersigned attorney, bring this action and allege herein as follows:

**THE PARTIES**

1. Plaintiffs are citizens of China. They have applied to become permanent residents of the United States.

2. Defendant Velocity V Limited Partnership ("VLP") is a California limited partnership organized under the laws of California with its principal place of business in Pasadena, California. Plaintiffs are limited partners of VLP.

3. Defendant Velocity Regional Center, LLC ("VRC") is a limited liability company organized under the law under California with its principal place of business in Pasadena and/or City of Industry, California. VRC is the general partner of VLP.

4. Defendant Jellick Rowland, LLC ("Jellick"), a California limited liability company organized under the laws of California with its principal place of business in Pomona, California. Defendant Chen is the 100% sole member of Jellick. Defendant Wang is the Manager of Jellick.

5. Defendant Wang is an individual whose last known United States domicile was in Hacienda Heights, California. At the current time, he is believed to be living overseas. According to corporate records, Defendant Wang was the Manager and Chief Executive Officer of VRC, the general partner of VLP.

6. Defendant Ruhen Chen is an individual whose last known United States domicile was in Los Angeles, California. Defendant Chen is the 100% sole member of Jellick.

- 2 -

**COMPLAINT**

7. Wang also was the owner and manager of Velocity Investment Group, Inc. ("Velocity Investment Group"), the entity whose name appears at the top of the Subscription Agreements with plaintiffs. There are two other actions now pending in the United States District Court for the Central District of California against Wang. One is entitled *Securities and Exchange Commission v. Yin Nan "Michael" Wang, et al.,* Case No. CV13-07553-JAK(SSx)(the "SEC Action"), in which the SEC accused Wang of running a Ponzi scheme through Velocity Investment Group, and defrauding other investors of millions of dollars in connection with that scheme; another is entitled *Liu v. Velocity VIII*, Case No. CV14-7060 (the "Velocity VIII Action"), in which a group of investors accused Wang of defrauding and breach of fiduciary duty through a EB-5 scheme.

8. Defendant Ko is an individual, whose last known domicile is unknown. Defendant Ko was the president and general manager of Jellick Rowland. Plaintiffs allege, on information and belief that, Ko, together with Guan, managed VRC, VLP and Jellick Rowland.

9. Defendant Christine Guan, also known as Yunyan Guan, is an individual whose last known domicile is Temple City, California. Defendant Guan was the Vice President of VRC, and of Velocity Investment Group. Along with Wang and Ko, Guan managed and operated VRC, VLP, and Jellick, and controlled the money which flowed between these entities, including the investment funds. Guan persuaded Plaintiffs to invest in VLP, both directly or indirectly through EB-5 agents. Guan negotiated VLP (and then Jellick's) purchase of the subsequent investment projects. Guan is also a defendant in the Velocity VIII Action.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and (c)(1), because it raises a controversy between citizen of a state and citizen of a foreign state, and because the amount in controversy thereunder exceeds the sum or value of $75,000, exclusive of

- 3 -

**COMPLAINT**

interest and costs. The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 as some of the claims arise under Federal Law.

11. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(a) and (c). On information and belief, Defendants VLP and VRC are headquartered and all defendants conduct business in the State of California. A substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Additionally, VLP is a company subject to personal jurisdiction in this judicial district.

## PRELIMINARY STATEMENT

12. Plaintiffs are the victims of a fraudulent scheme in which they were persuaded to invest in a business that were managed, controlled by, or affiliated with individual Defendants. 26 investors invested a total of $13,000,000 in VLP. Plaintiffs are eight of these 26 investors.

13. Each Plaintiff invested over $500,000 in VLP (referred to as "investment funds") in connection with his or her application for an EB-5 immigration visa. Each of them was informed that: (a) VLP would loan all the investment funds (the "Loan") to Jellick Rowland, LLC ("Jellick"), a California limited liability company, (b) Jellick would use the Loan proceeds to acquire, renovate, operate, and manage buildings located at 2322, 2350 and 2370 South Garey Ave., Pomona, CA 91766 (the "Property"), (c) the Property would be leased out by Jellick as offices, (d) The Loan will be secured by a deed of trust on the Property, which will not be subject to other liens without the written consent of VLP, (e) that $8,663,543.70 dollars were paid to three different construction companies.

14. After all the investors subscribed the units of VLP and completed the funding process. Defendants acquired the Property for $6,900,000 with $1,900,000 of cash and a promissory note in the amount of $5,000,000. The Property is subject to the lien created by this promissory note on February 21, 2012, which rendered the Plaintiff's right under the deed of trust

- 4 -
**COMPLAINT**

virtually unenforceable; Defendants also concealed the fact that instead of renovating and managing office buildings for lease, the use of the Loan is in fact to develop a school under the control of individual Defendants and some of the proceeds of the Loan were to acquire school licenses; moreover, individual Defendants stole the investment funds by transferring $8,663,543.70 to several companies in the name of construction expense, at least three of those companies were controlled by individual Defendants. However, little construction work was done on the Property since the Loan were received by Jellick.

15. Defendants engaged in a scheme and artifice to defraud Plaintiffs in connection with the purchase and sale of a security. In furtherance of the scheme and artifice to defraud, Defendants made untrue statements of material facts, omitted to state necessary material facts, concealed other material facts, and engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiffs. Through their illegal scheme and acts, Defendants intended to induce, and did induce, Plaintiffs to each invest over $500,000 in VLP.

16. As alleged below, with the intent to deceive, manipulate and defraud Plaintiffs, Defendants made oral misrepresentations about the investment in VLP, and provided Plaintiffs with various written documents containing additional misrepresentations, including a brochure, commitment letters, subscription agreements, loan agreements, limited partnership agreements, private placement memoranda, and business plans. Defendants' oral and written misrepresentations contained untrue statements of material facts and omitted to state necessary material facts. Defendants also concealed material facts from Plaintiffs. Plaintiffs reasonably relied in good faith on the representations Defendants made to them in deciding to invest in VLP.

17. Plaintiff seeks a monetary judgment against Defendants in the amount of $4,480,000, the amount of the investment, as well as damages reflecting interest on the amount of

**COMPLAINT**

investment, and the decline in the United States dollar relative to Chinese currency, dating from the time of the breach of contract and commitment of fraud.

## KEY FACTS

18. The Defendants use EB-5 program to solicit investment and run the fraudulent scheme. The EB-5 program, also known as Immigrant Investor Program, was created to stimulate the U.S. economy through job creation and capital investment by foreign investors. Under a pilot program first enacted in 1992, EB-5 visas were available for foreign investors who invested in regional centers designated by the United States Citizenship and Immigration Services based on proposals for promoting economic growth. To obtain the visa, individuals were required to invest at least $500,000 in a "Targeted Employment Area" (i.e., an area with high unemployment or a rural area), creating or preserving at least 10 jobs for U.S. workers excluding the investor and their immediate family. Often foreign investors are introduced to EB-5 projects through EB-5 agents who serve as intermediaries between regional centers and foreign investors. The investment was promoted as an EB-5 investment.

**A. Defendants Misrepresented to Plaintiffs that They Were Granted First Lien and Trust Deed on the Property**

19. On or about March 2011, Guan, vice president of VLP, emailed a set of documents to migration agent Mr. Rong Hsu to be passed on to potential Chinese investors, including Plaintiffs. Among those documents are a business plan, a commitment letter, a confidential placement memorandum, a loan agreement, and a trust deed.

20. The business plan was made in February, 2011 ("2011 Business Plan "). 2011 Business Plan stated that VLP, as a USCIS approved EB-5 project sponsor, would collect investment fund of $15,000,000 from 30 investors and then loaned to Jellick for purchase,

- 6 -
**COMPLAINT**

renovation, renting, and future management of four buildings. The Business Plan further stated that VLP would obtain the first lien on the Property. A true and correct copy of the 2011 Business Plan, which is in Chinese, is attached as Exhibit 1.

21. The private placement memorandum was made in March 15, 2011 ("PPM"). Para. 5, page 6 of the PPM provides that: The Loan to Jellick Rowland, LLC will be secured by a trust deed on property owned by Jellick Rowland, LLC. Should a default on the Loan occur, our remedy will be to foreclose on such collateral. A true and correct copy of the PPM is attached as Exhibit 2.

22. A loan agreement was entered into at May 2, 2011 ("2011 Loan Agreement"), in which VLP agreed to loan $15,000,000 to Jellick at an interest rate of 5%. Article 5A of 2011 Loan Agreement provides:

> Borrower conveys to Lender a security interest in all of the real property (the "Property") on which the Project is located. This security interest takes precedence over any encumbrance recorded after the date of this Agreement or unrecorded on the Property regardless of when granted. Borrower agrees to grant to the Lender, a Deed of Trust which complies with Section 1091 and 2911 of the California Civil Code on the Property which will secure the Loan. The security interest shall be extinguished upon full repayment of the principal balance and accrued interest.

A true and correct copy of the 2011 Loan Agreement and its attachments are attached as Exhibit 3.

23. A deed of trust was entered on May 2, 2011 between Jellick and, Title 365 Company for the benefit of VLP ("Trust Deed"). The Trust Deed provides that Jellick, as trustor, granted its power of sale and right of entry and possession of any property it owned to Title 365 Company, as trustee, in trust for the benefit of VLP as beneficiary, and executed a deed of trust. Article 5.2 of the Trust Deed also said:

> Trustor shall immediately discharge any lien on the Property which beneficiary has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or

appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Deed of Trust.

A true and correct copy of the Trust Deed is attached as Exhibit 4.

24. On February 15, 2012, Jellick purchased the Property with $1,900,000 of cash and a five million dollars promissory note. The previous owner of the Property, the City of Pomona, granted to Jellick the deed, which is subjected to the mortgage lien and a power of termination. If Jellick fails to pay all sums due as provided in the promissory note, Seller, the City of Pomona, have the right to terminate the fee simple estate of Jellick and revest title in Seller pursuant to California Civil Code Sections 885.010-885.070. This mortgage lien has essentially subordinate VLP's loan to that from the City of Pomana. Therefore, the statement that VLP has the first lien on the Property is a misrepresentation. On February 21, 2012, Jellick granted a deed of trust with assignment of rents to the City of Pomona.

25. On May 10, 2012, Defendant Guan sent emails in Chinese to investors. She promised again that VLP had the first lien on the Property, and the investors could receive a 2% investment return. On behalf of Jellick, she also stated that the renovation of the Project would be completed within one year.

26. Relying on the statement contained in the 2011 Business Plan, PPM, Deed Trust, and statement from Guan that their investments were secured by the first lien on the Property, Plaintiff subscribed the units from VLP from February 2012 to May 2012 by each injecting $5,000,000 into the Partnership. In addition, each investor has paid $60,000 to the VRC, which includes $45,000 as fund management fee and $15,000 as attorney fee.

27. After all the investors subscribed the units from VLP, VLP made another version of business plan in September 2013 ("2013 Business Plan"). The 2013 Business Plan disclosed that:

**COMPLAINT**

> The property was purchased from the City of Ponoma for a price of $6.9 million consisting of $1.9 million down payment and a $5 million purchase money mortgage. It is anticipated that the remaining balance on loan and the deferred payment to the General Contractor will be paid through a subsequent refinancing.

A true and correct copy of the 2013 Business Plan, is attached as Exhibit 5.

**B. Defendants Misrepresented to Plaintiffs on the Nature of the Project**

28. On October 25, 2012, VLP and Jellick entered into a new loan agreement ("2012 Loan Agreement") which supersedes the 2011 Loan Agreement. 2012 Loan Agreement described a completely different project than that described in the 2011 Loan Agreement and 2011 Business Plan. Article 2A of the 2011 Loan Agreement provides that the investment fund would be used "for the retirement of financing, construction, renovation, operation and management of the Project" Page 2 of the 2011Business Plan provides that three of the buildings would be leased to offices for commercial use, and the remaining one building would be ran as a cafeteria. Different from the above description, Article 2A of the 2012 Loan Agreement provides that the Loan is for the development of a school.

A true and correct copy of the 2012 Loan Agreement is attached as Exhibit 6.

29. In September 2013, VLP made another version of business plan ("2013 Business Plan"). In 2013 Business Plan, VLP materially changed the description of the project to the following:

> […] the acquisition and renovation of four stand-alone commercial buildings consisting of 114,016 Square Feet (SF) in Pomona, California into three educational entities that include a university, a language center, and a technical career training school, which will be operated and managed by Jellick Rowlland, LLC. The three educationally-oriented facilities include 80,226 SF for the university, 14,127 SF for the technical training school, and 19,663 SF for the language center.
>
> The university will be known as Gateway University, the language center will be known as Jellick After-School & Language Academy, and career training school known as Jellick Rowland International Career College.

30. In 2013 Business Plan, the said project (the "School Project") was estimated to cost $19,000,000 with $13,000,000 comes from 26 EB-5 investors, compared to 30 investors said in the previous business plan, $5 million from a loan carried by the City of Pomona, and $1 million deferred payment due three years after completion of construction, at a 5% per annum rate.

31. The School Project was never launched for lack of necessary license and funding.

**C. Misappropriation of the Money**

32. Upon information and belief, the four buildings to be renovated are mostly built in the 80s and in good condition.

33. Individual Defendants misappropriate and stole the investment funds by transferring $8,663,543.70 to several companies in the name of construction expense. Furthermore, at least three of those companies were controlled by individual defendants Wang, Ko, and Guan. Little or none construction work was done on the Property since the loan were received by Jellick.

34. Based on the financials retrieved from the Jellick, Jellick paid Y&C Builder, Inc. ("Y&C Builder") $1,170,000 in total from October 3, 2012 to July 16, 2013 for construction service to be provided. According to information listed on the website of California Secretary of State, Y&C Builder was incorporated under California law on February 21, 2012. Defendant Ko was listed as the agent for Y&C Builder with an address at 12324 Fineview St., El Monte CA 91733. Ko was also the president of Jellick.

35. Y & C Builder received $1,170,000, but rendered little or none construction services to Jellick.

- 10 -
**COMPLAINT**

36. Based on the financials retrieved from Jellick, Jellick paid Airwave Development Group, LLC ("Airwave") $5,038,610.21 in total from February 6, 2012 to October 10, 2012 for construction service to be provided. Airwave was incorporated under California law on January 3, 2011.

37. Airwave received $5,038,610.21, but rendered little or none construction services to Jellick.

38. Based on the financials retrieved from Jellick, Jellick paid Feng Construction Corp. ("Feng Construction") $1,320,615.64 in total from February 6, 2012 to December 20, 2013 for construction service to be provided. Feng Construction was incorporated under California law.

39. Feng Construction received $1,320,615.64, but rendered little or none construction services to Jellick.

40. Based on the financials retrieved from Jellick, Jellick paid other companies $1,134,321.45 in total from May, 2012 to November, 2013 for construction service to be provided. Those companies received $1,134,321.45, but rendered little or none construction services to Jellick.

41. On February 3, 2015, VLP has filed a petition for protection under Chapter 7 of the US Bankruptcy Code in United States Bankruptcy Court, Central District of California.

**FIRST CAUSE OF ACTION**
**For Securities Fraud (15 U.S.C. Section 771)**
**Against All Defendants**

42. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

43. In the offer or sale of a security, Defendants used the means or instruments of transportation or communication in interstate commerce or of the mails to disseminate a prospectus or oral communication, which included: untrue statements of a material fact or omitted

- 11 -

**COMPLAINT**

to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44. The untrue statements of a material fact and the omissions of a necessary material fact were not known by Plaintiffs and by the exercise of reasonable diligence could not have been known by Plaintiffs until at the end of March 2014.

45. By engaging in the conduct engaged above, Defendants violated Section 12(a)(2) of the Securities Act [15 U.S.C. § 77l)].

## SECOND CAUSE OF ACTION
**For Securities Fraud (15 U.S.C. Section 78j (b) & 17 CFR Section 240.10b-5)**
**Against All Defendants**

46. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

47. Defendants directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails:

48. employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and, (c) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchaser all in connection with the purchase or sale of securities.

49. By engaging in the conduct engaged above, Defendants violated Section 10b-5 of the Exchange act and Rule 1ob-5 thereunder. [15 U.S.C. § 10(b) and 17 CFR § 240.10b-5.]

## THIRD CAUSE OF ACTION
**Fraud and Deceit (Intentional Misrepresentation of Fact)**
**California Civil Code §1710(1)**
**(Against all Defendants)**

50. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

- 12 -
**COMPLAINT**

51. As alleged above, Defendants misrepresented and omitted material facts to Plaintiffs.

52. Defendants' representations and omissions were false. The true facts are specifically identified and alleged above.

53. At the time when VLP made the offer to the Plaintiffs, Defendants had actual knowledge of material facts relating to the 5 million dollar loan/mortgage arrangement between Jellick and the City of Ponoma, and had no reasonable ground to believe that Plaintiffs will be granted the first lien on the Property.

54. Further, Defendants failed to reveal the facts that the project had been materially changed.

55. Those misrepresentations were done intentionally and induced Plaintiffs to transfer and invest fund to VLP. Those misrepresentation hide the facts that instead of leasing out office space and collecting rent, Jellick has to run a technical school to earn profit, which is substantially more complicated than the original plan Defendants disclosed to Plaintiff.

56. Plaintiffs transferred the fund and invested in VLP at the inducement of Defendants in reliance on the misrepresentations. If Plaintiffs had known that the investment was not secured by the first lien on the Property or the Project would be materially changed from the Office leasing Project to the more complicated and difficult School Project, they would not have contributed the investment to VLP.

57. As a result of the fraud, Plaintiffs incurred damages in an amount no less than $ 40,000,000, and their plans of EB-5 immigration were significantly influenced and delayed.

**FOURTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(Against all Defendants)**

58. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

**COMPLAINT**

59. As alleged above, Defendants represented to Plaintiffs that various facts were true. However, such facts were not true; when Defendants made these representations, they had no reasonable ground for believing them to be true.

60. Defendants made these representations with the intention of inducing Plaintiffs to rely on these representations, i.e., to induce them to invest over $500,000 each in Defendants' business.

61. Plaintiffs reasonably relied on Defendants' representations by investing over $500,000 each in Defendants' business.

62. Plaintiffs were harmed thereby, and their reliance on Defendants' representations was a substantial factor in causing their harm.

63. By virtue of their wrongful acts and omissions and their unjust enrichment, Defendants hold the property as a constructive trustee for Plaintiffs.

**FIFTH CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY**
**Against Defendant VRC**

64. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

65. Pursuant to the Limited Partnership Agreement, VRC, the general partner of VLP, had a fiduciary relationship with the limited partners, Plaintiffs herein. This included a fiduciary responsibility for the safekeeping and use of all funds and assets of the limited partnership.

66. VRC breached that fiduciary duty by failing to safeguard the funds and assets of the limited partnership, including Plaintiffs' investment funds, and allowing such funds to be misappropriated by defendants.

67. Plaintiffs were damaged as a result of VRC' breach of fiduciary duty because the funds they invested in VLP were not used for the intended purpose but rather were misappropriated by Defendants.

68. As a direct and proximate result of VRC's fraudulent conduct, Plaintiffs have been damaged in amounts according to proof.

69. VRC's breaches of fiduciary duty were made with malice, oppression and fraud, and Plaintiffs are entitled to recovery of exemplary and punitive damages.

**WHEREFORE**, Plaintiffs pray for a judgment as follows:

a) On the 1st, 2nd, 3rd, 4th, and 5th Claims for Relief, compensatory damages according to proof in an amount that is at least $13,000,000;

b) On the 3rd, 4th, and 5th Claims for Relief general damages according to proof;

c) On the 1st, 2nd, 3rd, 4th, and 5th Claims for Relief, attorneys fees as allowed by law; and

d) On all causes of action such other and further relief as the Court may deem just and reasonable.

DATED: July 3, 2015                     WADE & LOWE
                                        A Professional Corporation

                                        By: *Geoffrey Hill* .
                                        GEOFFREY T. HILL
                                        Attorneys for Defendants, RAMON G.
                                        PONCE and OLIVIA GALVAN


Dated: June 24, 2015                    REID & WISE LLC.

                                        By: s/ Shiyong R. Ye
                                        SHIYONG R. YE
                                        Attorneys for Plaintiff
                                            Liu Hongwei, Li Xia, Liu Shuang,
                                            Xie Youshang, Wang Ying, Yu
                                            Zhihai, Wang Wei, and Yan Qiujin.

- 15 -

**COMPLAINT**