# United States District Court
# Central District of California

| | |
|---|---|
| LIU HONGWEI, LI XIA, LIU SHUANG, XIE YOUSHANG, WANG YING, YU ZHIHAI, WANG WEI, AND YAN QIUJIN,<br><br>Plaintiffs,<br><br>v.<br><br>VELOCITY V LIMITED PARTNERSHIP, VELOCITY REGIONAL CENTER LLC, JELLICK ROWLAND LLC, YIN NAN WANG, A.K.A. MICHAEL WANG, NING-LEE KO, RUHEN CHEN, AND CHRISTINE GUAN,<br><br>Defendants. | Case No. 2:15-cv-05061-ODW-E<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT YIN NAN (AKA MICHAEL) WANG [108]; DENYING PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 60(b) [111]** |

## I. INTRODUCTION

Plaintiffs Liu Hongwei, Li Xia, Liu Shuang, Xie Youshang, Wang Ying, Yu Zhihai, Wang Wei, and Yan Qiujin ("Plaintiffs") brought suit against Defendants Velocity V Limited Partnership ("VLP"), Velocity Regional Center LLC ("VRC"), Jellick Rowland LLC ("Jellick"), Yin Nan Wang, a.k.a. Michael Wang ("Wang"), Ning-Lee Ko, Ruhen Chen, and Christine Guan (collectively, "Defendants") for securities fraud and negligent misrepresentation. (ECF No. 1.) Wang is the sole

remaining defendant in the case. (*See* ECF Nos. 92, 93, 107.) Before the Court is Plaintiffs' third Motion for Default Judgment. (ECF No. 108.) The Court denied without prejudice Plaintiffs' previous motions for default judgment due to issues with inadequate parties and improper dismissal of actions. (ECF Nos. 94, 103.) For the following reasons, the Court **GRANTS** the Motion for Default Judgment, and awards Plaintiffs the principal amount of $4,000,000.00, plus prejudgment interest on the principal amount starting from September 26, 2012, and post-judgment interest from the date of judgment until the principal amount is paid in full. Furthermore, the Court **DENIES** Plaintiffs' Motion for Relief. (ECF No. 111.)[1]

## II. BACKGROUND

### A. Factual Background

Plaintiffs Liu Hongwei, Liu Shuang, Xie Youshang, Wang Ying, Yu Zhihai, Wang Wei, Hou Yunhang, and Zhou Wenqi ("Investor Plaintiffs")[2] are Chinese nationals who allege they are victims of a fraudulent scheme orchestrated by Defendants. (Compl. ¶¶ 1–9, 12.) Wang is the Manager and Chief Executive Officer of VRC, and the Manager of Jellick. (*Id.* ¶¶ 4, 5.) VRC is the general partner of VLP. (*Id.* ¶ 3.) In 2011, VLP devised a business plan (the "Business Plan") that was distributed to potential Chinese national investors, including Investor Plaintiffs. (*Id.* ¶ 19.) The Business Plan "stated that VLP, as a USCIS approved EB-5 project sponsor, would collect [an] investment fund of $15,000,000 from 30 investors" and then loan the money to Jellick for the purchase, renovation, renting, and future management of four buildings.[3] (*Id.* ¶ 20.)

---

[1] After carefully considering the papers filed in support of the pending Motions, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] Investor Plaintiffs Hou Yunhang and Zhou Wenqi are the children of the named plaintiffs Li Xia and Yan Qiujin, and have expressly ratified the pursuit of this lawsuit by their parents in compliance with Federal Rule of Civil Procedure 17(a)(3). (ECF No. 103.)

[3] EB-5 visas are available for foreign investors who have invested at least $500,000.00 in a "Targeted Employment Area," creating or preserving at least ten jobs for U.S. workers. (Compl. ¶ 18.)

Twenty-six individuals invested a total of $13,000,000 in VLP. (*Id.* ¶ 12.) Investor Plaintiffs are among the twenty-six investors and allege they were wrongfully induced to invest over $500,000 each in VLP. (*Id.* ¶¶ 12–13, 15.) Investor Plaintiffs were informed that once Jellick received the loan from VLP, Jellick would use the funds to acquire, renovate, operate, and manage buildings located at "2322, 2350 and 2370 South Garey Ave., Pomona, CA 91766" (the "Property"). (*Id.* ¶ 13.)

Plaintiffs allege that, up until May 2012, Defendants promised to obtain the first lien on the Property. (*See id.* ¶¶ 20–21, 25.) On February 15, 2012, without Investor Plaintiffs' knowledge, Jellick agreed to purchase the Property from the City of Pomona and conferred a first mortgage lien with the City of Pomona—leaving VLP's lien subordinate to the City of Pomona's lien. (*Id.* ¶ 24.) Wang and Jellick transferred $8,663,543.70 to several companies, some of which were controlled by Wang and other Defendants, and falsely characterized the transfers to Investor Plaintiffs as payments for construction expenses. (*Id.* ¶ 33.) Little construction was ever actually completed on the Property. (*Id.* ¶ 14.)

**B.     Procedural Background**

On July 5, 2015, Plaintiffs filed a Complaint alleging: (1) securities fraud under 15 U.S.C. § 77l against all Defendants; (2) securities fraud under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 against all Defendants; (3) fraud and deceit (intentional misrepresentation of fact) against all Defendants; (4) negligent misrepresentation against all Defendants; and (5) breach of fiduciary duty against VRC. (*See generally* Compl.)

Defendant Guan answered Plaintiffs' Complaint on January 10, 2016. (ECF No. 29.) On May 9, 2016, Guan informed the Court that she had filed for Chapter 7 relief in the United States Bankruptcy Court for the Central District of California, thereby staying the case as to Guan. (ECF No. 49.) On January 4, 2017, Plaintiffs filed proofs of service indicating that they served Jellick and Wang. (ECF Nos. 26, 27.) After Jellick and Wang failed to respond to the Complaint, the Clerk entered default against

Defendants on January 14, 2016, and February 18, 2016, respectively. (ECF Nos. 35, 42.) Plaintiffs filed their first Application for Default Judgment against all Defendants on September 8, 2017. (ECF No. 66.)

On October 31, 2017, the Court ordered Plaintiffs to provide an explanation as to whether "there is no just reason for delay" to direct entry of default against two of the seven Defendants in accordance with Federal Rule of Civil Procedure 54(b). (ECF No. 67.) On November 12, 2017, Plaintiffs filed a Notice of Voluntary Dismissal, dismissing VLP, VRC, Ning-Lee Ko, and Ruhen Chen, without prejudice, from this action. (ECF Nos. 68, 92.) Plaintiffs also entered into and filed a Stipulation of Dismissal dismissing Guan from the action. (ECF Nos. 83, 93.) As a result, Defendants Wang and Jellick were the only remaining Defendants in the action. On November 28, 2017, the Court denied Plaintiffs' first application for default judgment because named Plaintiffs Li Xia and Yan Qiujin were not real parties in interest and, therefore, had not stated a claim on which they were entitled to default judgement. (ECF No. 94.)

On December 29, 2017, Plaintiffs requested the dismissal of Counts I and II of the Complaint against Defendants Wang and Jellick. (ECF No. 100.) That same day, Plaintiffs filed their second Motion for Default Judgment and requested ratification for Plaintiffs Li Xia and Yan Quijin. (ECF No. 101.) On March 26, 2018, the Court denied Plaintiffs' request for dismissal of Counts I and II and their corrected motion for default judgement without prejudice. (ECF No. 103.) The Court, however, granted Plaintiffs' motion for ratification and ordered the Plaintiffs to provide the Court with a status report no later than April 26, 2018. (*Id.*) On April 16, 2018, the Court ordered Plaintiffs to file their third Motion for Default Judgment no later than April 30, 2018. (ECF No. 105.)

Thereafter, Plaintiffs dismissed Jellick from the case without prejudice on April 30, 2018. (ECF No. 107.) On May 1, 2018, Plaintiffs filed their third Motion for Default Judgment against Wang. (ECF No. 108.) On May 10, 2018, Plaintiffs moved

4

for relief pursuant to Rule 60(b), requesting relief from any proposed dismissal by the Court based on their belated filing. (ECF No. 111.)

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(a), the Clerk of the Court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After a default has been entered by the Clerk of the Court, a court may enter a default judgment pursuant to Rule 55(b). Fed. R. Civ. P. 55(b). However, "a defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal 2002).

Before the Court can award a default judgment, the requesting party must satisfy the procedural requirements established under the Local Rules of this district and Rule 55 of the Federal Rules of Civil Procedure. *Id.* at 1174. Central District of California Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against whom default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, an incompetent person, or exempt under the Servicemembers' Civil Relief Act; and (4) that the defaulting party was served with notice, if required by Fed. R. Civ. P. 55(b)(2). *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014); C.D. Cal. Local Rule 55-1.

If these procedural requirements are satisfied, a district court has discretion to grant a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, a court must consider several factors (the "*Eitel* Factors"): (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72

(9th Cir. 1986). Generally, upon entry of default, the defendant's liability is conclusively established, and the Court accepts the well-pleaded factual allegations in the complaint as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV. DISCUSSION

### A. Procedural Requirements

Plaintiffs satisfy the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(a) and Local Rule 55-1. By declaration, Plaintiffs attorneys identified the Complaint and established that the Clerk of the Court entered default against Wang on February 18, 2016. (Decl. of Jeffery Jacobs in Supp. Mot. for Default J. ("Jacobs Decl.") 1, ECF No. 108-2.) The Declaration further confirms that Wang, is neither an infant, an incompetent person, nor exempt under the Servicemembers' Civil Relief Act. (*Id.* ¶ 1.) Finally, Plaintiffs provided the Court with notice that Wang has not appeared in this action, and, as such, written notice of default judgment under Federal Rule of Civil Procedure 55(b)(2), as referenced by Local Rule 55-1(e), is not required. (*Id.* ¶ 2.) Plaintiffs have met the applicable procedural requirements.

### B. *Eitel* factors

In determining if default judgment is appropriate, the Court considers in turn each of the seven factors articulated in *Eitel*, 782 F.2d at 1471–72. The Court finds that the *Eitel* factors weigh in favor of granting this Motion.

1.  *Potential prejudice to Plaintiffs*

The first *Eitel* factor considers the prejudice that would be suffered by the plaintiff, if default is not entered. *Eitel*, 782 F.2d at 1471. Denial of default leads to prejudice when it leaves a plaintiff without a remedy or recourse for recovery of compensation. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo*, 238 F. Supp. 2d at 1177. "[P]ast misconduct and current failure to litigate [a] case indicate that [a defendant] is highly unlikely to correct past

behavior or otherwise compensate [p]laintiffs without a default judgment by the Court." *Kerr Corp. v. Tri Dental, Inc.*, No. SACV 12–0891–DOC–CWx, 2013 WL 990532, at *3 (C.D. Cal. Mar. 11, 2013).

As discussed below, Wang has had sufficient time to appear in this suit, but has not done so. At this point, default judgment is the only way for Plaintiffs to receive compensation for Wang's securities fraud and negligent misrepresentation. The first *Eitel* factor weighs in favor of granting default judgment.

2. *Merits and sufficiency of Plaintiffs' four claims*

"Under an *Eitel* analysis the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Universal Music-MGB NA LLC v. Quantum Music Works, Inc.*, No. CV 16–3397 FMO (AJWx), 2017 WL 2350936, at *3 (C.D. Cal. May 30, 2017) (quotation omitted). Together, the two factors "require that a plaintiff state a claim on which [it] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

a. Claim One: Securities Fraud (15 U.S.C. § 77l)

In order to allege fraud under § 77l, the investment offer must constitute a public offering. 15 U.S.C. § 77d(2) ("[T]ransactions by an issuer not involving any public offering" are exempted transactions.). When there is a private transaction, such as here, the offering must qualify under the private offering exception. A private offering is considered public when "the particular class of persons affected needs the protection of the securities laws, and is subject to a four factor test." *Bridges v. Geringer*, No. 13-CV-01290-EJD, 2015 WL 2438227, at *5 (N.D. Cal. May 21, 2015) (quotation omitted); *see also S.E.C. v. Murphy*, 626 F.2d 633, 644–65 (1980). This private offering exemption hinges on (1) the number of offerees; (2) the sophistication of the offerees; (3) the size and manner of the offering; and (4) the relationship of the offerees to the issuer. *Murphy*, 626 F.2d 633 at 644–65 (1980) (citations omitted).

The four factors weigh in favor of finding that the investment constitutes a public offer under § 77l. First, the offering documents specified that the "VLP units would be

sold to 30 investors," which indicates that the opportunity to invest must have been marketed to more than 30 foreign investors. (Mot. Default J. ("Mot. Def. J.") 13, ECF No. 108-1.) While the number of investors is relatively small, the Court interprets the stated number of offerees to be determinative as the total amount of investors is unknown without Defendant's response. *See People v. Humphreys*, 4 Cal. App. 3d 693, 698 (1970) ("The significant factor is not the number of ultimate purchasers but rather the number of offerees."). Additionally, the Court does not find the second element of the private offering exception to be strongly demonstrated because the level of sophistication of the "Chinese and Taiwanese individuals, who made the investment[s]" is unknown. (Mot. Def. J. 14.) Even so, a lack of finding of the second factor is not dispositive. Third, the offerings were neither small nor offered in a private manner as each investor financed at least $500,000.00 and was contacted about the investment through EB–5 migration agents. (Compl. ¶¶ 9, 13.) Lastly, the investment relationship was such that Plaintiffs were dependent on Defendants to produce evidence that all the information was truthful and available. *Murphy*, 626 F.2d at 647 ("A court may only conclude that the investors *do not* need the protection of the Act if all the offerees have relationships with the issuer affording them access to or disclosure of the sort of information about the issuer.") (emphasis added). Altogether, the four factor test indicates that the investment offer constitutes a public offering, and therefore falls under the protection of § 77l.

Section 77l imposes civil liability against any person who offers or sells a security by a prospectus or oral communication through misrepresentation or omission of material information. 15 U.S.C. § 77l. To prevail under a securities fraud claim, "a plaintiff must demonstrate (1) an offer or sale of a security, (2) by the use of a means or instrumentality of interstate commerce, (3) by means of a prospectus or oral communication, (4) that includes an untrue statement of material fact or omits to state

a material fact that is necessary to make the statements not misleading." *Miller v. Thane Intern, Inc.*, 519 F.3d 879, 885 (9th Cir. 2008).[4]

Under Federal Rule of Civil Procedure 9(b), "an allegation of fraud or mistake must state with particularity the circumstances constituting fraud." *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 415–16 (C.D. Cal. 2012) (citing Fed. R. Civ. P. 9(b)). This heightened pleading standard requires "that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific to give defendants notice of the particular misconduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). Specifically, the plaintiff must allege the "who, what, when, where, and how" of the fraudulent activity. *Vess*, 317 F.3d at 1106 (9th Cir. 2003) (internal quotations omitted). Yet, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Following the heightened pleading standard of Rule 9(b), Plaintiffs meet all four requirements for a claim of securities fraud.

Plaintiffs have met the first requirement for securities fraud by demonstrating that the EB–5 investments constitute a "security." Under the Securities Exchange Act, a "security" is defined to "encompass virtually any instrument that might be sold as an investment," including investment contracts. *S.E.C. v. Edwards*, 540 U.S. 389, 393 (2004); *see also S.E.C. v. Hui Feng*, No. 15-CV-09420, 2017 WL 6551107, at *4–6 (C.D. Cal. Aug. 10, 2017) ("EB–5 investments are investment contracts and therefore securities governed by federal securities laws and regulations.").

Plaintiffs have also met the second and third requirements by showing that Wang authorized sending "fraudulent brochures and offering documents" to the Plaintiffs through interstate commerce. (Mot. Def. J. 12.) Here, VLP sent "a business plan,

---

[4] Wang can be held individually liable. The Ninth Circuit has explained that defendants are considered to have offered or sold a security when the plaintiff shows "that the defendants solicited purchase of the securities for their own financial gain." *In re Daou Sytems, Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005). Plaintiffs meet this requirement by alleging that "Wang misappropriated and transferred the investment funds to his affiliated entities for his own financial benefit." (Mot. Def. Judgment 15.)

commitment letter, a confidential placement memorandum, a loan agreement, and a trust deed," to the Plaintiffs outside of California to initiate the EB–5 investment. (Compl. ¶¶ 19, 20.) These documents constitute a prospectus, which is defined as "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security." 15 U.S.C. §77b(10). Furthermore, though Wang did not personally send out the documents, he was "in charge of the entire company," which included "VLP, Jellick and other Velocity entities." (Mot. Def. J. 6.) Moreover, Wang personally "approved" the offer sent to the Plaintiffs, which stated that "VLP would obtain the first lien on the Property." (Compl. ¶ 20; *see also* Dep. Of Christine Guan ("Dep.") 92, ECF No. 108-2 Ex. D.)

The fourth requirement is also satisfied as the investments were not utilized as offered and the first lien was given to the City of Pomona instead of VLP. (Compl. ¶ 24.) In fact, testimony from the Vice President of VRC and Velocity Investment Group, Inc.[5] states that Wang "knowingly declined" to record the lien because "he assured the City of Pomona that it would have a first-priority lien on the Property." (Mot. Def. J. 6–7.) Thus, the offerings Defendants provided to Plaintiffs were in fact not only misleading, but also completely untrue as Wang acted with scienter by "caus[ing] the Velocity entities to misrepresent to the Investor Plaintiffs . . . that the Property was secured by a first-priority lien." (*Id.* at 17.) Accordingly, the Court finds that the Plaintiffs have stated a valid claim for securities fraud under 15 U.S.C. § 77l, which is sufficiently pleaded pursuant to Rule 9(b).[6]

---

[5] Velocity Investment Group, Inc. is an entity allegedly controlled by Wang and "[the] name [that] appears at the top of the Subscription Agreements with plaintiffs." (Compl. ¶ 7, Ex. 2; *see also* Mot. Def. J. 6.)

[6] By asserting that Wang misrepresented the investment through the offering documents, alleging specific factual information, and providing general allegations of Wang's actions and mental intent, Plaintiffs establish the "who, what, how, where, and when" of Rule 9(b) for all four claims. (*See generally* Compl.)

b. Claim Two: Securities Fraud (15 U.S.C. § 78j(b) and 17 C.R.F. § 240.10b–5)

Determining a cause of action for securities fraud under § 78j(b) and Rule 10b–5, requires a showing of "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 (9th Cir. 2016) (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011)).

The above analysis establishes that Plaintiffs sufficiently pleaded elements one, two, and three for a claim of securities fraud under § 78j(b) and Rule 10b–5.

The fourth requirement is also satisfied as the Plaintiffs' losses resulted from reliance upon misrepresentations of both the adequacy and type of the investment. "The traditional . . . way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation." *Halliburton Co.*, 563 U.S. at 810. In February 2011, Plaintiffs were provided a Business Plan that explained the entirety of the project and the investment requirements. (Compl. ¶ 20.) The next year, Plaintiffs were sent additional emails which "promised again that VLP had the first lien on the Property." (Compl. ¶ 25.) Plaintiffs allege that they "reasonably relied in good faith on [these] representations" to make their investments. (Compl. ¶ 16.) The Court finds that Plaintiffs have adequately pleaded reliance.

Plaintiffs also satisfy the fifth and sixth elements for securities fraud. First, Plaintiffs clearly show an economic loss of their $500,000.00 investment occurred when the City of Pomona seized the Property. (Mot. Def. J. 17–18; Compl. ¶ 33.) Second, Plaintiffs adequately pleaded "loss causation," which requires "investors [to] demonstrate that the defendant's deceptive conduct caused their claimed economic loss." *Halliburton Co.*, 563 U.S. at 807; *see also Lloyd*, 811 F.3d at 1209 ("[T]he

plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event.") Here, Plaintiffs allege that Wang's intentional refusal to record VLP's loan and his transfer of $8,663,543.70 into several affiliated construction companies, led to Jellick defaulting on the loan and VLP filing for Bankruptcy. (Mot Def. J. 17–18.) VLP's ownership of the first lien was an essential element of the offer and necessary collateral for the VLP investment project. (*Id.* at 18.) Consequently, the Court finds that Plaintiffs have adequately demonstrated that the economic loss was caused by Wang's misrepresentations regarding the stability of the project and ownership of first lien on the Property. Therefore, Plaintiffs have a valid claim for securities fraud under 15 U.S.C. § 78j(b) and 17 C.R.F. § 240.10b–5.

   c. <u>Claim Three: Fraud and Deceit (Intentional Misrepresentation of Fact) (California Civil Code §1710(1))</u>

The essential elements for a claim of fraud are: (1) misrepresentation, which includes either a false representation, concealment or nondisclosure; (2) knowledge of falsity; (3) intent to defraud, which includes an intent to induce reliance; (4) justifiable reliance; and (5) damages.[7] *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 419 (C.D. Cal. 2012) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 637 (1996)).

First, Plaintiffs clearly allege misrepresentation by asserting that Wang omitted, misrepresented, and concealed information that directly contradicted the offering documents. The offering documents were first sent to Plaintiffs as a Business Plan in 2011 and explicitly stated that VLP would have first-priority lien on the Property and that the Property would be redeveloped and leased for commercial purposes. (Compl. ¶ 20.) Yet, when the Property was purchased in February 2012, the first-priority lien was given to the City of Pomona instead of VLP. (*Id.* ¶ 24.) Despite these events, Plaintiffs were still being informed that VLP would have the first lien on the Property. (*Id.* ¶ 25).

---

[7] "Knowledge of falsity" is also referred to as scienter.

Plaintiffs meet elements two and three of their claim by asserting Wang "knew these representations were false" and "intended to induce the Investor Plaintiffs . . . to rely on these representations." (Mot. Def. J. 18–19.) Plaintiffs provide detailed factual support for these allegations by offering testimony from Christina Guan who confirmed Wang knew about the offering documents and that he refused to have VLP record the lien. (*Id.* at 7); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (noting falsity can be sufficiently alleged "by pointing to inconsistent contemporaneous statements or information . . . which were made by or available to the defendants.")

Lastly, Plaintiffs meet the fourth and fifth requirements for a claim of fraud by reasonably alleging that Plaintiffs invested in the project "[i]n reliance on these repeated presentations concerning the first-priority status of VLP's lien on the Property . . . and that the investments would be . . . used to renovate the Property." (Mot. Def. J. 8, 17.) This reliance is reasonable as the Plaintiffs lost their $500,000.00 investments, because the Property was foreclosed on when VLP was unable to use the Property as collateral due to the City of Pomona having first lien on the Property. (*Id.* at 17.)

### d. Claim Four: Negligent Misrepresentation

In order to state a claim for negligent misrepresentation, a plaintiff must plead: (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007). "Negligent misrepresentation is a species of fraud or deceit specifically requiring a[n]. . . assertion." *Wilson v. Century 21 Great Western Realty*, 15 Cal. App. 4th 298, 306 (1993). Yet, unlike an allegation of fraud, "negligent misrepresentation does not require knowledge of falsity." *Apollo*, 158 Cal. App. 4th at 243. Moreover, it is not entirely clear whether the heightened pleading standard of Rule 9(b) also applies to claims of negligent misrepresentation. *Petersen*, 281 F.R.D. at 418–

19; *see also Howard v. First Horizon Home Loan Corp.*, No. 12–CV–05735–JST, 2013 WL 6174920, at *5 (N.D. Cal. Nov. 25, 2013) ("[T]he Ninth Circuit has not yet decided whether Rule 9(b) applies to negligent misrepresentation claims.") (internal quotations omitted).

Since the Court concludes that the Complaint states a valid claim for fraud against Wang based on the facts alleged and the testimony of Christine Guan discussed above, the Court also finds Plaintiffs have stated a claim for negligent misrepresentation. *Cisco Systems, Inc. v. Tsai*, No. ED–CV–14–00791–JAK–Asx, 2015 WL 12732459, at *5 (C.D. Cal. Jan. 9, 2015) ("[T]he claim for negligent misrepresentation can be established by the same elements [of fraud], but without the knowledge element.").

3. *Possibility of disputed material facts*

The next *Eitel* factor considers the possibility of disputed material facts. *PepsiCo*, 238 F. Supp. 2d at 1177. The general rule is that a defaulting party admits the facts alleged in the complaint to be taken as true. *Televideo*, 826 F.2d at 917–19. Thus, this *Eitel* factor often weighs strongly in favor of default judgment. Here, after taking the facts alleged in the Complaint as true, the Court finds no substantial gaps or inconsistencies in the record that indicate disputes of material facts.

Although there is some ambiguity regarding the extent of Wang's involvement with the offer sent to the Plaintiffs, testimony clearly shows that Wang personally authorized and misrepresented key material facts in the investment offer. Plaintiffs assert "the representations that the loan to Jellick would be secured by a first-priority lien were false, and Wang knew them to be false." (Mot. Def. J. 6.) Providing factual support to strengthen their claim, Plaintiffs point to Wang's extensive involvement with the companies controlling the offer, as well as Christine Guan's testimony that indicated "Wang knowingly declined" to record VLPs loan. (*Id.* at 6.) Moreover, Plaintiffs assert that "Wang misappropriated and transferred the investment funds to his affiliated entities for his own financial benefit," thereby satisfying the test for individual liability.

(*Id.* at 15.) Wang's involvement in the claims at issue is therefore not a potentially disputed material fact in this case.

In sum, the record does not contain substantial inconsistencies, which would preclude default judgment. Since the Plaintiffs address the key factual inquiries necessary to determine some form of misrepresentation and fraud by Wang, this *Eitel* factor weighs in favor of granting default judgment.

### 4. *The sum of money awarded to Plaintiffs*

The fourth *Eitel* factor balances the sum of money at stake with the "seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11–0961–CW (MEJ), 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011) (internal citations omitted). The amount at stake must not be disproportionate to the harm alleged. *Id.* Default judgments are disfavored where the sum of money requested is too large or unreasonable in relation to a defendant's conduct. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Although Plaintiffs are asking for $4,000,000.00 in damages, the amount consists of each Plaintiff's individual investment of $500,000.00. Each plaintiff lost at least half a million dollars and an opportunity to secure a visa through the EB–5 program, making the sum requested proportional to the harm alleged. Therefore, this factor presents no barrier to default judgment in this case.

### 5. *Excusable neglect and the Federal Rules of Civil Procedure favoring decisions on the merits.*

Wang has been served with notice of the Plaintiffs' prosecution of this suit, and Wang's failure to defend can no longer be described as excusable neglect. (*See* ECF Nos. 11, 17, 25, 26, 42.) Finally, although the Federal Rules of Civil Procedure favor decisions on the merits, when a defendant such as Wang has failed to appear, "a decision on the merits [is] impractical, if not impossible," and default judgment is warranted. *PepsiCo*, 238 F. Supp. 2d at 1177.

For these reasons, the Court finds that the *Eitel* factors favor granting a default judgment against Wang.

**C.     Remedies**

The Plaintiffs request compensatory damages, prejudgment interest, and post-judgment interest. (Mot. Def. J. 4.) The Court will address each request in turn.

1. *Compensatory damages*

Courts generally apply "out-of-pocket [expenses] in §10(b) cases involving fraud by a seller of securities." *Randall v. Loftsgaarden*, 478 U.S. 647, 662 (1986). "Under the out-of-pocket standard, a defrauded purchaser is entitled to recover the difference between the price he or she paid for a security and the actual value of that security at the time of the purchase, plus interest on the difference." *Chassin Holdings Corporation v. Formula VC Ltd.*, No. 15–cv–02294–EMC, 2017 WL 66873, at *13 (N.D. Cal Jan. 6, 2017). Out-of-pocket expenses "focus[] on the plaintiff's actual loss, rather than on his potential gain." *DCD Programs, Ltd. v. Leighton*, 90 F.3d 1442, 1447 (9th Cir. 1996).

The Plaintiffs calculate their out-of-pocket expenses by aggregating the minimum amount each plaintiff invested in VLP. (Mot. Def. J. 4.) Each Plaintiff invested a minimum of $500,000.00. (*Id.* at 22.) The principal amount lost thereby totals $4,000,000.00. Each Plaintiff lost the entirety of their investment when the Property was foreclosed upon and no EB–5 visas were provided through the VLP investment. (*Id.* at 3.) Therefore, the Court finds Plaintiffs' calculation to be a reasonable estimate of compensatory damages.

2. *Prejudgment interest*

"Where there are pendent state claims in addition to federal claims, state law governs entitlement to prejudgment interest and its computation under the state claims, unless preempted by federal law." *Chassin*, 2017 WL 66873, at *14; *see also Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, No. 1:08–CV–00481–AWI–SMS, 2009

WL 565568, at *8 (E.D. Cal. Mar. 5, 2009) (stating that "[p]rejudgment interest is a substantive part of a plaintiff's claim, and not merely a procedural mechanism.").

California Civil Code section 3288 provides: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." "Courts have interpreted 'in the discretion of the jury' to mean in the discretion of a trier of fact." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 076 (N.D. Cal. 2006) (internal citations omitted). Moreover, under California Civil Code section 3287(a), "a person who is entitled to recover damages certain . . . is entitled also to recover interest thereon." Cal. Civ. Code § 3287(a). The legal rate of interest in California, absent a statute to the contrary, is seven percent per annum. Cal. Const. art. XV, § 1.

Here, Plaintiffs state a claim for Fraud and Deceit under California Civil Code § 1710(1). The damages ascertained by the Court and requested by the Plaintiffs are certain at the time of investment, thereby complying with California Civil Code section 3287(a). Moreover, Plaintiffs request a conservative accrual date for prejudgment interest based on the latest date that any of the Plaintiffs invested in VLP. (Mot. Def. J 23.) Accordingly, the Court awards Plaintiffs' seven percent interest per annum on the principal amount of $4,000,000.00 from September 26, 2012, through the date of entry of judgment.

3. *Post-judgment interest*

Following 28 U.S.C. § 1961, the Ninth Circuit holds that "once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed." *Perkins v. Standard Oil Co.*, 487 F.2d 672, 675 (9th Cir. 1973); *see Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) ("Under the provisions of 28 U.S.C. § 1961, postjudgment interest on a district court judgment is mandatory."). Post-judgment interest therefore also applies to the prejudgment interest component of a monetary award. *Air Separation*, 45 F.3d at 291 ("[T]here in fact appears to be no material distinction between judgments for

prejudgment interest and judgments for the principal sum."). Pursuant to § 1961, the post-judgment interest rate is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961.

Accordingly, the Court awards Plaintiffs post-judgment interest on both the principal amount and pre-judgment interest at the rate established in 28 U.S.C. § 1961.

### D. Motion for Relief Pursuant to Rule 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure permits a court to relieve a party from a final order or judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, and (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1–6).

Plaintiffs request "that the Court refrain from dismissing Plaintiffs' action and for relief from any proposed dismissal based on the untimely belated filing." (Mot. for Relief 3, ECF No. 111.) The Court has not entered a judgment or an order to dismiss this case and therefore does not need to address Plaintiffs' motion. Thus, the Court **DENIES** Plaintiffs' Motion for Relief, because it is not ripe.

//
//
//
//
//
//
//
//
//

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion for Default Judgment and awards the amount of $4,000,000.00 in compensatory damages, prejudgment interest on the principal amount starting on September 26, 2012, and post-judgment interest pursuant to 28 U.S.C. § 1961. (ECF No. 108.) The Court **DENIES** Plaintiffs' Motion for Relief Pursuant to Rule 60(b). (ECF No. 111.) The Court will issue a judgment.

**IT IS SO ORDERED.**

July 11, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**